236 So.2d 322

**Dola T. PRATHER et al.**

v.

**NASHVILLE BRIDGE CO., a Corp.**

**6 Div. 624.**

Supreme Court of Alabama.

April 9, 1970.

Rehearing Denied June 11, 1970.

George S. Brown, Birmingham, for appellants.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellee.

SIMPSON, Justice.

This case was brought under the provisions of Title 26, § 312, Code of Alabama, by the widow and dependents of decedent Duel Prather. The complaint claimed damages in the amount of $500,000 for injuries resulting in the death of Prather, charging defendant with negligence, in that while the said Duel Prather was working as a truck driver for the Alabama Freight Lines the defendant, at the Bessemer Galvanizing Works Division of the defendant, Nashville Bridge Company, a corporation, loaded a trailer truck being operated by Prather with twelve large and heavy sections of galvanized steel pipe and then and there undertook to secure same for delivery by Prather; and that after Prather had transported said load and while standing alongside said load, one of the sections of pipe fell off and onto Prather, causing him to suffer injuries from which he died.

The complaint went on to allege that the death of Prather was the proximate consequence of the negligent failure of the defendant to properly secure the steel pipe on the trailer truck.

The case was tried to a jury which returned a verdict in favor of the defendant. Plaintiffs appealed, and while the brief sets out the evidence of each witness in narrative form, and runs to more than 190 pages, appellants concede at the outset that only two points are relied on for reversal. They are as follows:

First, that the judgment must be reversed because the court allowed members of the jury to put more than 100 different questions to various witnesses throughout the trial. No objection was interposed by either side to this interrogation of witnesses by members of the jury. It is conceded by counsel on both sides that no Alabama case has been found on this precise point. Our research has revealed none. The appellant contends that no objection was made because of fear and apprehension that the interposition of any objection would

prejudice the objector's case with the jury. They rely on cases from other jurisdictions which have severely criticized the practice and reversed cases on this ground, even in the absence of objection. However, an annotation at 159 A.L.R. 347 indicates that a majority take a different view. It is there stated:

"While some courts have criticized the practice of allowing jurors to examine witnesses, in most cases the practice has either been approved, or the fact that such questions were asked, or permitted by the trial court, has been held not to constitute error. However, the manner of approval, or the language of the courts in concluding that the practice does not constitute error, is not entirely harmonious."

 The annotation goes on to analyze the rationale of the courts in dealing with this matter. Some have held that it is discretionary with the trial court; some have taken the position that the practice should be encouraged, while others take the position that it should be discouraged. While no cases in Alabama have dealt directly with the point, we are not without general authority for the disposition of the point here. Our cases have consistently held that where no objection is made, the trial court cannot be put in error. The appellate courts in Alabama review only such matters as were ruled on by the trial court.—Ala.Dig. 2, Appeal & Error, ☞ No. 206(2). Hence, we do not reach the question of whether error would have resulted had proper objection been made and overruled to the questions put by members of the jury.

We believe the statement made by the Missouri court in Ray v. Collins, Mo.App., 274 S.W. 1098, is consistent with Alabama law:

"In the trial of the case, while one of the defendants was testifying, a juror was permitted, at his own request, to ask him certain questions. Appellants contend this was error, though no objection to the question was made at the time. Appellants seek to excuse themselves for not objecting upon the ground that, if objection were made, it would prejudice the mind of the jury against them. That may be true, but we know of no rule of law which will convict a trial court of error for admitting testimony to which no objection is made. Appellants could have had the matter [sic] by an instruction from the court, even if they did fear to make an objection when the testimony was offered. They could have asked the court to instruct the jury to disregard the testimony thus elucidated, and this instruction, coming from the court, would not result in prejudice against defendants in the minds of the jurors."

The only other point raised by appellants is based upon the refusal of the trial court to give certain requested written charges. Plaintiffs here sued Nashville Bridge Company. Their contention was that although the loading of the truck had been done by Bessemer Galvanizing Works, the latter was a wholly owned subsidiary of Nashville Bridge Company and wholly controlled by Nashville Bridge Company. On this issue the trial court charged the jury as follows:

" * * * Nashville Bridge Company denies everything that is stated in the Plaintiff's complaint, among other things, denying the averment that the Nashville Bridge Company caused the trailer to be loaded with the pipe, and further specifically denying there was any negligence on the part of the person who loaded the truck and trailer. * * *

"Insofar as the responsibility of the warrent [sic, parent] corporation, Nashville Bridge Company, and as far as Bessemer Galvanizing Works is concerned, the law is this, a parent corporation is responsible for the conduct of the subsidiary, but only is [sic, if] the warrent [sic, parent] controls the subsidiary to such an extent that the subsidiary becomes an [sic, and] is what is

called a mere instrumentality of the parent. With reference to the complaint of the plaintiff that the Bessemer Galvanizing Works was a mere instrumentality of the Nashville Bridge Company, the Plaintiff has the burden of reasonably satisfying you of the truth of this claim."

The appellants describe the trial court's charge on the relationship between Nashville Bridge and Bessemer Galvanizing Works as "skimpy" and insist that error occurred in the refusal of the court to give several charges, the following of which is representative of those refused:

"I charge you, ladies and gentlemen of the jury, if you are reasonably satisfied from the evidence that the corporation, Bessemer Galvanizing Works, on the occasion complained of was so organized and controlled and its affairs so conducted as to make it merely an instrumentality or adjunct of the corporation, Nashville Bridge Company, then you should disregard the legal fiction of distinct corporate existence."

We cannot agree with the appellants that the trial court's oral charge failed to cover the matter set out in the requested charges which were refused. We think the oral charge adequately apprised the jury with respect to the law on this point. The language of the oral charge and the requested written charges is essentially the same. No error may thus be predicated on the refusal of these charges. Title 7, § 273, Code of Alabama; cases at Ala. Digest, Trial, ⟐ No. 260(1).

The judgment appealed from must be affirmed.

Affirmed.

McCALL, J., concurs.

LAWSON, MERRILL, and BLOODWORTH, JJ., concur specially.

LIVINGSTON, C. J., and COLEMAN and HARWOOD, JJ., dissent.

BLOODWORTH, Justice (concurring specially).

I concur in the result of this decision. I do not think the trial court should be reversed for permitting jurors to put more than 100 questions to witnesses during the trial when no objection is made by either counsel.

I look with disfavor on frequent questioning by the jury. While, on rare occasions, a question by a juror may serve to clear up some obscurity, misunderstanding, or uncertainty, it may place counsel (who may wish to object to a question) in a position of apprehension that his objection may prejudice his case with the jury.

Nevertheless, I consider it the duty of counsel either to object to the precise question (which he feels is objectionable), or, if he does not want to put himself in this position, to make known to the court at a side-bar out of the presence of the jury, or at a recess, and on the record, that he does object to a question or frequent questions by the jury. Unless counsel is required to take some affirmative step to make his objection known to the court, it has no way to know if either counsel has any objection to a specific question put by a juror, or to the frequency of questioning by jurors and counsel could speculate on the verdict and if adverse, insist on this ground as error. I do not believe there should be any duty on the part of the trial court sua sponte to stop occasional questioning by the jury.

LAWSON, and MERRILL, JJ., concur.

On Rehearing

HARWOOD, Justice (dissenting).

A majority of the court has this day denied the application for rehearing filed in this case.

I dissented from the opinion and judgment affirming the judgment in this cause, but did not set forth my reasons for dissenting. It was my conclusion then, and still is, that the action of the jurors in interrogating various witnesses went beyond permissible limits. If this be so, then the plaintiff did not receive a trial free of prejudicial matter. To this she was entitled.

I am dissenting from the action of a majority of my brethren in denying the application for rehearing. I would grant the same and reverse the judgment.

I agree that occasional questions by a juror are permissible, provided such questions are germane to the issues, and by inference are asked to clarify in the juror's mind the true meaning of the witness' testimony.

However, when over 100 questions are posed by jurors to various witnesses (counsel for appellant states that by actual count there were 130), then the very weight of the numbers carry the questioning by the jurors beyond the allowable range of occasional questions.

Of more serious import is the nature of some of the questions propounded by the jurors. Some indicate that the juror had in mind the doctrine of assumption of risk, totally irrelevant in the proceedings below. Others would have been subject to objection if posed by counsel. Several of the questions were clearly more argumentative than interrogative.

As stated in State v. Sickles, 220 Mo.App. 290, 286 S.W. 432:

"* * * The juror was proceeding by the grace of the court and not by right, and in so delicate a situation the court should have acted without requiring objection to be made by counsel."

It would appear that the conduct of the jurors in this case was palpably erroneous, and was ineradicably prejudicial to the substantial rights of the appellant. Such matter was presented on the motion for a new trial. Under such circumstances it should be available on appeal. See Bayliss Machine & Weld. Co. v. Huntsville Ice and Coal Co., 265 Ala. 383, 91 So.2d 483; Brotherhood of Railroad Trainmen v. Jennings, 232 Ala. 438, 168 So. 173.

LIVINGSTON, C. J., and COLEMAN, J., concur.